UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

WILLIAM T. JACKLING,

                              Plaintiff,

                                                    Case # 15-CV-6148-FPG
v.
                                                    DECISION AND ORDER

HSBC BANK USA, N.A. and
HSBC MORTGAGE CORPORATION (USA),

                              Defendants.

## INTRODUCTION

William T. Jackling brings this action against HSBC Bank USA, N.A. and HSBC Mortgage Corporation (USA) (collectively "HSBC") asserting six claims for violation of the Fair Credit Reporting Act ("FCRA"), a seventh claim for breach of contract, an eighth claim for violation of the Truth in Lending Act ("TILA"), and a ninth claim under the Home Affordable Modification Program ("HAMP"). He primarily claims that HSBC inaccurately reported several of his monthly mortgage payments as delinquent, causing him to suffer the denial of credit and emotional damages. HSBC moves for summary judgment as to all of Jackling's claims. As set forth below, summary judgment is GRANTED in part and DENIED in part.

## BACKGROUND

Since 2007, William and Martha Jackling had a mortgage loan with HSBC. In 2010, the Jacklings applied for a loan modification due to financial hardship.

### I.    The 2010 Forbearance Agreement

In response to their modification application, in April 2010, HSBC offered the Jacklings a Forbearance Agreement under which HSBC would accept partial payments starting in June 2010.

1

The Forbearance Agreement contained a "Credit Reporting" provision stating that HSBC would report the Jacklings' loan as delinquent for so long as the loan was not current under the original loan documents, even if the Jacklings timely made the partial payments in accordance with the Forbearance Agreement. ECF Nos. 62-10, ¶ 21; 62-15 at 4. The Forbearance Agreement also provided that HSCB would hold the partial payments in a suspense account until they totaled an amount sufficient to pay the oldest delinquent monthly payment in full. ECF Nos. 62-10, ¶ 21; 62-15 at 3. The Jacklings signed the Forbearance Agreement on May 5, 2010 and sent it to HSBC. ECF Nos. 62-15; 69, ¶11.

But the Jacklings also signed a second copy of the Forbearance Agreement in which they crossed out the language in the "Credit Reporting" provision allowing HSBC to report the loan as delinquent. ECF No. 62-16 at 4 (the "Altered Forbearance Agreement"). Jackling claims that he sent the Altered Forbearance Agreement to HSBC along with the original, unaltered copy (hereinafter the "Original Forbearance Agreement"). ECF No. 69, ¶11. Relying on an unintelligible mark on HSBC's signature line, ECF No. 62-16 at 5, Jackling claims that HSBC signed and agreed to the Altered Forbearance Agreement.[1]

Pursuant to the Forbearance Agreement, between June and December 2010, the Jacklings made six partial payments and three full payments. ECF Nos. 62-29 at 5-6; 69, ¶ 15. HSBC held the partial payments in the suspense account and applied them in arrears once enough funds were received for a full monthly payment. ECF Nos. 62-10, ¶ 37; 62-29 at 5-6. The full payments were also applied in arrears to the next oldest delinquent monthly payment, so that by December 2010, the Jacklings were only current through November 2010. *Id.* Thus, although the Jacklings timely

---

[1] It is undisputed that HSBC never signed the Original Forbearance Agreement. But since HSBC's alleged promise not to report the 2010 forbearance payments as delinquent only arises from the Altered Forbearance Agreement, regardless of whether HSBC signed the Original Forbearance Agreement, HSBC was entitled to report the payments as delinquent if it did not enter into the Altered Forbearance Agreement. This issue is discussed further below.

made their payments under the Forbearance Agreement, the payments were untimely under the original loan documents, and as permitted by the Original Forbearance Agreement, HSBC considered the payments to be delinquent. ECF Nos. 62-10, ¶ 22-25; 62-15 at 3-4.

## II. The 2011 Loan Modification

In January 2011, HSBC approved the Jacklings' request for a loan modification. Pursuant to the resulting Loan Modification Agreement, the unpaid interest for the months of December 2010, January 2011, and February 2011[2] were capitalized and added to the principal balance of the Jacklings' loan, and the Jacklings were to begin making modified payments on March 1, 2011. ECF Nos. 62-10, ¶ 62; 62-26 at 2-3; 62-28 at 3, 6, 7, 10; 62-29 at 7.

The Jacklings timely made their full March, April, and May payments under the Loan Modification Agreement, ECF Nos. 69-5 at 14; 62-26 at 7-8, but for reasons unclear on the record, HSBC held these payments in a suspense account and did not apply them to their respective due dates until May 2011. ECF No. 62-29 at 8. The Jacklings' payments for the first five months of 2011 were reported as "unknown" or "late." ECF Nos. 37, ¶ 25; 69, ¶ 22; 69-12 at 3.

## III. The Jacklings' History of Complaints to HSBC About Adverse Credit Reporting

At various points in 2010 and/or 2011, Jackling contacted HSBC to complain that it was improperly reporting several of his 2010 and 2011 payments as delinquent to credit reporting agencies ("CRAs"). ECF No. 69, ¶ 23. According to Jackling, HSBC should not have reported the 2010 partial forbearance payments as delinquent because it agreed not to by signing the Altered Forbearance Agreement, ECF Nos. 37, ¶¶ 15-20; 69, ¶ 9-19, and it should not have reported the 2011 modification payments as delinquent because the Jacklings timely and fully made them under the Loan Modification Agreement. ECF Nos. 37, ¶¶ 21-23; 69, ¶ 20-21.

---

[2] The modification documents suggest that interest for November 2010 was also capitalized. ECF No. 62-26 at 2. It is unclear why, since Jackling seems to have made a payment that was applied to November 2010, but in any case, Jackling signed the Loan Modification Agreement, so he cannot now argue that the capitalization term was incorrect.

On September 8, 2011, HSBC sent the Jacklings a letter advising them that it had removed any delinquencies as to their March and April 2011 payments, and that their account was now reporting as current and in good standing. ECF No. 69-13 at 2. But HSBC did not correct the reporting, and on December 6, 2011, he sent HSBC a letter again asking it to report no late payments. ECF Nos. 69, ¶¶ 23-24; 69-14 at 2.

The record is silent as to whether there were any credit reporting issues during 2012-2013, but in February 2014, the Jacklings contacted HSBC again and in response, on April 22, 2014, the servicer[3] of the Jacklings' loan sent the Jacklings a letter telling them that "no delinquencies have been reported to the credit bureaus." ECF Nos. 69, ¶ 23; 69-5 at 2.

## IV. The TransUnion Credit Report at Issue in this Case

Despite HSBC's and the servicer's assurances that the Jacklings' account was current and in good standing and that no delinquencies had been reported, a TransUnion credit report dated July 13, 2014 reflected numerous delinquencies and payments of "unknown" status, including the March and April 2011 payments for which HSBC had told the Jacklings any delinquency reports were removed:

- 08/2010 30 days late
- 09/2010 30 days late
- 10/2010 60 days late
- 11/2010 90 days late
- 12/2010 60 days late
- 01/2011 X – unknown
- 02/2011 X – unknown
- 03/2011 X – unknown
- 04/2011 X – unknown
- 05/2011 30 days late

ECF Nos. 37, ¶ 25; 69, ¶ 22; 69-12 at 3.

---

[3] HSBC transferred servicing of the loan to PHH Mortgage Corporation in May 2013. ECF No. 71-2, ¶¶ 4-13.

## V.     The Jacklings' Disputes as to TransUnion's Credit Report

Jackling asserts that he initiated a dispute of the July 13, 2014 credit report with TransUnion in July 2014, but there is no documentary evidence of this dispute in the record.  HSBC contends that TransUnion did not notify it of the dispute, ECF No. 62-9; 62-10, ¶¶ 49-57, and the Jackling seems to concede this.  ECF No. 69, ¶ 25.

Jackling initiated a second dispute with TransUnion in December 2014.  ECF Nos. 37, ¶¶ 24-27; 69, ¶ 25.  HSBC did receive notice of this dispute from TransUnion.  ECF Nos. 62-10, ¶ 53; 62-9 at 4.  CRAs like TransUnion notify furnishers of information like HSBC of disputes through an electronic transmission format called an Automated Consumer Dispute Verification ("ACDV").  HSBC received an ACDV from TransUnion on December 12, 2014 and responded on December 16, 2014.  ECF Nos. 62-10, ¶ 50; 62-9 at 4.  The ACDV record reflects that HSBC modified the Jacklings' account information, but it is not clear how.  ECF No. 62-9 at 4.

Jackling initiated a third dispute with TransUnion in January 2015.  ECF Nos. 37, ¶ 28.  HSBC received a second ACDV from TransUnion on January 28, 2015 and responded on January 29, 2015.  ECF Nos. 62-10, ¶ 54; 62-9 at 5.  Again, the ACDV record reflects that HSBC modified the Jacklings' account information, but again, it is not clear how.  ECF No. 62-9 at 5.

## VI.     Jackling's Complaint in this Court

Jackling filed his Complaint in this Court on March 16, 2015.  ECF No. 1.  The operative Third Amended Complaint asserts the following claims:

1. Willful violation of the FCRA based on the July 2014 dispute
2. Willful violation of the FCRA based on the December 2014 dispute
3. Willful violation of the FCRA based on the January 2015 dispute
4. Negligent violation of the FCRA based on the July 2014 dispute
5. Negligent violation of the FCRA based on the December 2014 dispute
6. Negligent violation of the FCRA based on the January 2015 dispute
7. Breach of contract
8. TILA violation
9. HAMP claim

ECF No. 37.  The FCRA claims, though separated into six claims, are all based on the reporting

of the 2010 forbearance payments and 2011 modification payments as reflected in the July 2014

TransUnion credit report.

HSBC now moves for summary judgment on all of Jackling's claims.  ECF No. 62.

## DISCUSSION

### I.    Summary Judgment Standard

Summary judgment is warranted "if the movant shows that there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a).  Where, as here, the nonmovant would bear the burden of proof at trial,

> the movant may show prima facie entitlement to summary judgment in one of two
> ways: (1) the movant may point to evidence that negates its opponent's claims or
> (2) the movant may identify those portions of its opponent's evidence that
> demonstrate the absence of a genuine issue of material fact, a tactic that requires
> identifying evidentiary insufficiency and not simply denying the opponent's
> pleadings.  If the movant makes this showing in either manner, the burden shifts to
> the nonmovant to point to record evidence creating a genuine issue of material fact.
> Like the movant, the nonmovant cannot rest on allegations in the pleadings and
> must point to specific evidence in the record to carry its burden on summary
> judgment.

*Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006) (internal citations omitted).  A mere

scintilla of evidence in support of the nonmovant's position is insufficient; there must be evidence

on which the jury could reasonably find for the nonmovant.  *Anderson v. Liberty Lobby, Inc*., 477

U.S. 242, 252 (1986).

The Court must resolve all genuinely disputed facts in favor of the nonmovant, and if the

Court then determines that no rational jury could find in favor of the nonmovant, summary

judgment in favor of the movant is appropriate.  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

**II.    Claims 1-6: Willful (Claims 1-3) and Negligent (Claims 4-6) Violation of the FCRA**

Jackling's first six claims assert that HSBC willfully or negligently violated section 1681s–2(b) of the FCRA, which "imposes a duty upon furnishers of credit information [like HSBC] to investigate credit disputes" after receiving notice from a CRA. *Anthony v. GE Capital Retail Bank*, 321 F. Supp. 3d 469, 477 (S.D.N.Y. 2017). "While the Second Circuit has not yet defined the specific contours of a furnisher's investigatory responsibility under this statute, courts both within and outside the Circuit have assumed a reasonableness standard for judging the adequacy of the required investigation." *Dickman v. Verizon Comms., Inc.*, 876 F. Supp. 2d 166, 172 (E.D.N.Y. 2012).

Most courts agree that consumers have a private right of action for a furnisher's violation of section 1681s–2(b). *See Comunale v. Home Depot, U.S.A., Inc.*, 328 F. Supp. 3d 70, 80 (W.D.N.Y. 2018). To state a claim, a consumer must show that (1) a furnisher received notice of a credit dispute from a CRA (as opposed to from the consumer alone) and (2) the furnisher negligently or willfully failed to conduct a reasonable investigation. *Frederick v. Capital One Bank (USA), N.A.*, No. 14-CV-5460 (AJN), 2018 WL 1583289, at *6-7 (S.D.N.Y. Mar. 27, 2018).

**A.   Whether HSBC Received Notice from a CRA**

Here, Jackling's first and fourth claims are based on his July 2014 dispute, but Jackling seems to concede that HSBC did not receive notice of this dispute from TransUnion. ECF No. 69, ¶ 25. Since notice of the dispute must come from the CRA, HSBC's motion for summary judgment is GRANTED as to Jackling's first and fourth claims. *Frederick*, 2018 WL 1583289, at *6.

Jackling's second, third, fifth, and sixth claims are based on his December 2014 and January 2015 disputes, and HSBC admittedly received notice of these disputes from TransUnion. ECF Nos. 62-10, ¶¶ 53-54, 62-9 at 4-5. The Court thus addresses the reasonableness of HSBC's investigation of these two disputes.

**B. Whether HSBC Conducted a Reasonable Investigation**

Jackling's December 2014 and January 2015 disputes both challenged HSBC's reporting of the 2010 forbearance payments and the 2011 modification payments. The Court will address these two groups of payments in turn.

**1. The 2010 Forbearance Payments**

Jackling claims that a reasonable investigation would have revealed that HSBC promised not to report his 2010 forbearance payments as delinquent by executing the Altered Forbearance Agreement containing his handwritten changes to the "Credit Reporting" provision. ECF No. 69-25, ¶ 7. His contention that HSBC executed the Altered Forbearance Agreement is based on the presence of an unintelligible mark on HSBC's signature line and Jackling's belief that a woman named Rose Viana signed it on behalf of HSBC. ECF Nos. 69 at 3, 13.

HSBC responds that no amount of investigation would have revealed this "promise" because HSBC never executed the Altered Forbearance Agreement. ECF No. 62-31 at 9; 71-2, ¶¶ 9-13; 71-3 at 13.

Jackling argues that whether Rose Viana signed the Altered Forbearance Agreement is a genuine issue of material fact that precludes summary judgment. The Court disagrees. Even assuming Rose Viana *did* sign the Altered Forbearance Agreement, HSBC's evidence shows that she had no authority to do so, and that she was not even an employee of HSBC, but rather worked for the servicer to which the Jacklings' loan was transferred in 2013. ECF Nos. 62-10, ¶¶ 17-18, 71-2, ¶¶ 4-13. Jackling presents no evidence to the contrary.

Further, in contrast to his Declaration statement on summary judgment that Rose Viana signed the Altered Forbearance Agreement, Jackling's prior deposition testimony was that he did not know who put the unintelligible mark on the Altered Forbearance Agreement. ECF Nos. 71-

1 at 7-8, 71-3 at 16. Jackling cannot "create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts [his] previous deposition testimony." *Hayes v. N.Y. City Dep't of Corrs.*, 84 F.3d 614, 619 (2d Cir. 1996).

Because Jackling has not shown a genuine issue of material fact as to whether HSBC executed the Altered Forbearance Agreement and thus promised not to report his 2010 forbearance payments as delinquent, there is likewise no genuine issue of material fact as to whether a reasonable investigation would have revealed that HSBC reported inaccurate information. Jackling thus cannot prevail on his FCRA claim as to the 2010 forbearance payments. *See Felts v. Wells Fargo Bank, Nat'l Ass'n*, 893 F.3d 1305, 1313 (11th Cir. 2018) (holding that, regardless of the nature of the investigation, a plaintiff asserting an FCRA claim cannot prevail without demonstrating that a reasonable investigation would have revealed that the furnisher had reported inaccurate information; otherwise, the plaintiff would be unable to demonstrate any injury); *Frederick*, 2018 WL 1583289, at *7 ("[W]hile it may be self-evident, if Plaintiff cannot show that any of the information was inaccurate, there is no harm."); *Podell v. Citicorp Diners Club, Inc.*, 914 F. Supp. 1025, 1036 (S.D.N.Y. 1996) (to prevail on an FCRA claim, a plaintiff "must prove that inaccurate information in a credit report caused him harm").

Accordingly, summary judgment is GRANTED in favor of HSBC as to the 2010 forbearance payments.

## 2. The 2011 Modification Payments

Jackling also claims that HSBC failed to reasonably investigate to ascertain the accuracy of its reporting of the 2011 modification payments as "unknown" or "late."

"Whether a defendant's investigation is reasonable is a factual question normally reserved for trial, but summary judgment is proper if the reasonableness of the defendant's procedures is

beyond question and if the plaintiff has failed to adduce evidence that would tend to prove that the investigation was unreasonable." *Hudson v. Babilonia*, 192 F. Supp. 3d 274, 301 (D. Conn. 2016). Here, HSBC fails to show that its investigation was reasonable "beyond question" and Jackling presents evidence of unreasonableness.

First, HSBC does not indicate whether it reviewed the Loan Modification Agreement as part of its investigation. The Loan Modification Agreement governed the Jacklings' payment obligations in 2011. Without knowing whether HSBC reviewed this central document, the Court cannot conclude that HSBC's investigation was reasonable "beyond question."

Second, HSBC does not specify what information it *did* review. HSBC's corporate representative, Denise Dickman, only vaguely explains that HSBC's investigator

> compared the information being reported by the CRA against HSBC's own records and, where appropriate, modified the information provided by the CRA to accurately reflect HSBC's own records. In each instance, HSBC conducted an investigation with respect to the disputed information, reviewed the information provided by the CRA, modified the information being furnished at the CRA to match HSBC's internal records, and reported its response to the CRAs as required by the FRCA. Thereafter, Trans Union reported the modified account information verified by HSBC.

ECF No. 62-10, ¶¶ 58-60. Dickman repeatedly references "information" without actually identifying what information HSBC reviewed and compared. Additionally, HSBC acknowledges that its investigation revealed "differences in the payment pattern being reported by TransUnion and HSBC's records concerning the actual payment pattern for the account," ECF No. 62-31 at 15-16; 62-1, ¶ 61, but HSBC does not clarify what those differences were or whether they related to the payments Jackling disputed. The Court cannot evaluate the reasonableness of HSBC's investigation without knowing what information HSBC reviewed. *See Jenkins v. AmeriCredit Fin. Servs., Inc.,* No. 14CV5687SJFAKT, 2017 WL 1325369, at *7 (E.D.N.Y. Feb. 14, 2017) (finding that questions of fact existed as to reasonableness of investigation where defendant failed to "detail

the exact nature and scope" of the investigation); *Jensen v. Peoples Gas Light & Coke Co.*, No. 04 C 2945, 2005 WL 2007123, at *4 (N.D. Ill. Aug. 16, 2005) ("Any determination of the reasonableness of [the furnisher's] investigation in light of the information it possessed requires knowledge of what information it did in fact possess.").

Third, HSBC's evidence is unclear as to how it modified the Jacklings' account in response to the ACDVs. Dickman's Declaration states only that "[t]he account information modification details are set forth in the . . . ACDV[s]." ECF No. 62-10, ¶ 53, 57. But the ACDVs are not self-explanatory. Instead, they "contain many codes and abbreviations," making it "unclear what specific action [HSBC] took after receiving" them. *Trikas v. Universal Card Services Corp.*, 351 F. Supp. 2d 37, 44 (E.D.N.Y. 2005) (acknowledging lack of clarity of ACDVs). HSBC's evidence is thus insufficient to warrant summary judgment. *See Robbins v. CitiMortgage, Inc.*, No. 16-CV-04732-LHK, 2017 WL 6513662, at *11 (N.D. Cal. Dec. 20, 2017) (finding that the defendant-bank's evidence was insufficient to warrant summary judgment where the ACDVs "demonstrate[d] that an investigation took place, but they reveal[ed] almost nothing about what happened during the investigation").

Jackling also comes forward with his own evidence suggesting that HSBC's investigation was not reasonable. He submits HSBC's September 8, 2011 letter confirming that it removed the delinquencies related to the March and April 2011 payments to ensure that the Jackling's account was reporting as current and in good standing. ECF No. 69-13 at 2. He also submits a July 2017 credit report showing that the March and April 2011 payments were finally corrected to reflect a status of "ok." ECF No. 69, ¶ 26; 69-16 at 5. This evidence suggests that that HSBC agreed with Jackling that the reporting should be corrected—calling into question HSBC's failure to fix the reporting upon receiving the ACDVs in December 2014 and January 2015.

Thus, HSBC is not entitled to summary judgment on the reasonableness of its investigation of the 2011 modification payments. The Court turns to whether there is a genuine issue of material fact as to Jackling's claims that HSBC's reporting and investigation caused him to suffer damages.

## C. Damages

To prevail on an FCRA claim, a plaintiff must prove either (1) that the defendant's negligent violation caused him actual damages, in which case the plaintiff is entitled to recover those actual damages, or (2) that the defendant's violation was willful, in which case the plaintiff is entitled to recover actual damages, if any, or statutory damages, as well as punitive damages. *See Ritchie v. N. Leasing Sys., Inc.,* 14 F. Supp. 3d 229, 234, 240 (S.D.N.Y. 2014).

### 1. Actual Damages (Claims 5 and 6)[4]

Actual damages can include both economic damages stemming from the denial of credit and emotional damages. *See Frederick*, 2018 WL 1583289, at *11; *Caltabiano v. BSB Bank & Tr. Co.*, 387 F. Supp. 2d 135, 141 (E.D.N.Y. 2005). Emotional damages may be freestanding and need not arise from the denial of credit, but they often do. *Wenning v. On-Site Manager, Inc.*, No. 14 CIV. 9693 (PAE), 2016 WL 3538379, at *19 (S.D.N.Y. June 22, 2016). "[T]o recover actual damages, a plaintiff must establish a 'causal relationship between the violation of the statute and the loss of credit or other harm.'" *Frederick*, 2018 WL 1583289, at *11 (quoting *Burns v. Bank of Am.*, 655 F. Supp. 2d 240, 250 (S.D.N.Y. 2008)).

Here, Jackling claims that he suffered both economic and emotional damages, both stemming from the denial of credit. HSBC argues that Jackling cannot present sufficient admissible evidence of either types damages and cannot link any damages to HSBC's reporting.

---

[4] Claim 4 also sought actual damages, but summary judgment has already been granted as to that claim.

### a.      Economic Damages

Jackling claims that he was denied credit on at least four occasions between 2014 and 2015:

1. Denial of an auto loan from Dorschel Toyota;
2. Denial of an auto loan from Affordable Auto;
3. Denial of a credit increase from Synchrony Bank;
4. Denial of an auto loan from Cortese Ford.

ECF No. 69, ¶ 27 (a)-(d).

The Affordable Auto and Synchrony Bank denials are supported only by Jackling's bare Declaration statements, which do not even say that the denials were based on TransUnion's credit report, let alone any inaccurate information reported by HSBC. This evidence is insufficient to survive summary judgment. *See McMillan v. Experian*, 170 F. Supp. 2d 278, 281 (D. Conn. 2001) (striking affidavit which failed to identify any basis for affiant's knowledge of why credit was denied); *Howell v. Equifax Info. Servs., LLC*, No. 1:14-CV-148 SNLJ, 2017 WL 76892, at *5 (E.D. Mo. Jan. 9, 2017) (granting summary judgment for defendant where plaintiff failed to present a denial letter or affidavit of car dealership employee and instead relied on only his own testimony and hearsay evidence). Summary judgment is thus GRANTED in favor of HSBC as to the Affordable Auto and Synchrony Bank denials.

The Dorschel Toyota and Cortese Ford denials are supported by four credit denial letters. HSBC argues that the credit denial letters are not authenticated and thus constitute inadmissible hearsay evidence which cannot be used to survive summary judgment. *See Gorman v. Experian Info. Sols., Inc.*, No. 07 CV 1846 (RPP), 2008 WL 4934047, at *6 (S.D.N.Y. Nov. 19, 2008) (noting that credit denial letters were inadmissible hearsay documents).

While the letters are admittedly unauthenticated, the Court has the discretion to consider them on summary judgment and exercises that discretion here, as there is no suggestion that they are actually inauthentic. *See Am. Ref-Fuel Co. of Niagara, LP v. Gensimore Trucking, Inc.*, No.

02-CV-814C F, 2007 WL 2743449, at *3 (W.D.N.Y. Sept. 18, 2007) (explaining that the court has the discretion to consider unauthenticated evidence where it is apparent that the party may be able to authenticate the documents at trial); *Perpall v. Pavetek Corp.*, No. 12-CV-0336 (PKC), 2017 WL 1155764, *9 (E.D.N.Y. 2017) ("At the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents."); *Perkins v. United States*, No. 16-CV-495V, 2018 WL 3548597, at *8 (W.D.N.Y. July 24, 2018) (explaining that Rule 56(c)(1) allows a party to object to summary judgment evidence on the basis that it "cannot be" presented in a form that "would be" admissible in evidence, suggesting that inadmissible materials may be considered on summary judgment as long as they "can be cleaned up at trial to remove any evidentiary infirmities").

HSBC further argues that the credit denial letters fail to establish a causal link to any inaccurate information reported by HSBC because they do not specifically mention HSBC or the information it reported. In support, HSBC relies on *Gorman.* But *Gorman* does not say that a credit denial letter must specifically mention the defendant-furnisher or the precise information it reported. *Gorman* held that the plaintiff failed to establish a causal link between the denial of credit and the defendant-CRA, Experian, because none of the credit denial letters in evidence relied on an Experian credit report in denying credit. *Id.* at *6-7. *Cf. Swontek v. Cont'l Cent. Credit Inc.*, No. CV-16-03602-PHX-DJH, 2018 U.S. Dist. LEXIS 166735, at *13 (D. Ariz. Sep. 27, 2018) (rejecting defendant's argument that credit denial letters were insufficient evidence because they did not specifically list the erroneously reported account as the culprit).

In cases finding no causal link between the credit denials and the inaccurate information, there has been no evidence *at all* to establish such a link. For example, in *Jenkins*, 2017 WL 1325369, at *8, there was no evidence that any party relied on the erroneous credit report in

denying plaintiff a loan.  Similarly, in *Casella v. Equifax Credit Info. Servs.*, 56 F.3d 469, 473 (2d Cir. 1995), there was no evidence that the erroneous credit report had been provided to any third parties.  Here, in contrast, three of the four credit denial letters reference TransUnion's credit report.  ECF No. 69-17 at 2, 69-20 at 2, 69-21 at 2.

HSBC also argues that Jackling failed to depose any of the prospective creditors to discern exactly why they denied him credit.  But at least one court has held that credit denial letters, without additional testimony from the creditors, were sufficient to survive summary judgment.  *See Philbin v. Trans Union Corp.*, 101 F.3d 957, 968 (3d Cir. 1996) (holding that "[t]he district court erred by assuming that [plaintiff] could satisfy his burden only by introducing direct evidence that consideration of the inaccurate entry was crucial to the decision to deny credit. While [plaintiff's] case might have been stronger had he deposed or taken affidavits of those responsible for the decision, such evidence is not essential to make out a prima facie case pursuant to § 1681e(b).").

Admittedly, the credit denial letters do list numerous reasons, making the extent to which the denials were based on inaccurate information from HSBC unclear.  However, Jackling is not required to "eliminate the possibility that 'correct adverse entries or any other factors' also entered into the decision to deny credit."  *Frost v. Experian & TRW, Inc.*, No. 98 CIV. 2106 JGK JCP, 1999 WL 287373, at *8 (S.D.N.Y. May 6, 1999); *see also Fahey v. Experian Info. Sols., Inc.*, 571 F. Supp. 2d 1082, 1089 (E.D. Mo. 2008) ("[T]here is no precedent supporting the conclusion that plaintiff bears the burden of proving that Experian's report was the sole cause of his inability to secure financing."); *Enwonwu v. Trans Union, LLC*, 364 F. Supp. 2d 1361, 1366 (N.D. Ga. 2005) ("Forcing a plaintiff affirmatively to rule out other explanations for the credit denial ignores the fact that decisions to deny credit will frequently have more than one cause. For example, in some instances the inaccurate entry and another factor may each, considered separately, be insufficient

to have caused the denial of credit but when taken together are sufficient. Each may then be considered a substantial factor in bringing about the denial of credit and therefore a cause of plaintiff's injury.").

Accordingly, as to the Dorschel Toyota and Cortese Ford denials, Jackling has presented sufficient evidence of economic damages to survive summary judgment, and summary judgment is DENIED to HSBC on those credit denials.

### b.  Emotional Damages

Turning next to the emotional damages, Jackling claims that he suffered emotional distress, nervousness, sleeplessness, and other mental, emotional, and physical suffering.  ECF No. 37, ¶¶ 34, 45, 51, 57, 62, 67, 72.  He asserts that because he could not get credit, he was anxious, could not sleep at night, sometimes ate too much to alleviate stress, and gave up hobbies.  ECF No. 69, ¶ 30.  He also claims that being denied credit caused him humiliation, embarrassment, and sadness. ECF No. 69, ¶ 27(a), (c), (d).

HSBC argues that these claims cannot survive summary judgment because they are not corroborated or supported by specific, concrete evidence.

Courts disagree as to whether corroboration is necessary for an emotional damages claim to survive summary judgment.  *See Wenning*, 2016 WL 3538379, at *20 (noting split in authority and citing cases holding that, on the one hand, "conclusory," "unsupported," and "subjective" testimony is legally insufficient, and that, on the other hand, there is no statutory basis requiring corroboration).

Even absent a categorical requirement, however, corroboration is still a factor in evaluating whether an emotional damages claim is demonstrable enough to reach a jury.  *Id*. at *22.   Other factors include "whether plaintiff's testimony is conclusory or detailed; whether plaintiff's asserted

distress was short-lived or long-lasting; and whether the emotional distress is linked to a credit denial or similarly adverse event." *Id.* at *20. Courts also look to "outward manifestation of emotional distress," particularly as observed by others, *Howell*, 2017 WL 76892, at *4, and whether the plaintiff sought medical treatment for the emotional distress. *See Okocha v. HSBC Bank USA, N.A.*, No. 08 CIV.8650(MHP), 2010 WL 5122614, at *6 (S.D.N.Y. Dec. 14, 2010).

Here, Jackling's emotional damages evidence is conclusory. He claims that he experienced anxiousness, sleeplessness, embarrassment, etc., without detailed testimony as to "outward manifestations" of his distress. He submits a Declaration from his doctor, Jules Zysman, but that Declaration does not indicate that Jackling sought mental health care for emotional distress due to denial of credit. Rather, the Declaration discloses that Jackling had been a patient of Dr. Zysman's for almost 40 years, and that Jackling (who was in his late 70s) was suffering from various medical issues such as hypertension, diabetes, and depression. ECF No. 69-23. Dr. Zysman attests that some of Jackling's depression was due to the death of his wife, and that financial pressure exacerbated Jackling's conditions. *Id., see Frederick*, 2018 WL 1583289, at *12 (holding that doctor's note did "not establish a causal connection and merely state[ed] that Plaintiff was under the care of a physician); *Caltabiano*, 387 F. Supp. 2d at 142 (holding that the plaintiff failed to establish actual damages where he did not "provide[ ] any psychiatric or medical records to support that he has suffered emotional damages as a result of the Defendants' actions").

Jackling's evidence shows that he was under great financial pressure for years due to his wife's illness, and that he spent nearly all of his savings caring for her in the last few years of her life. ECF No. 69, ¶ 28. But the evidence does not sufficiently link his emotional distress to any inaccurate information furnished by HSBC and is not sufficiently detailed to send to a jury.

Accordingly, summary judgment is GRANTED to HSBC as to emotional damages.

### 2. Willfulness (Claims 2 and 3)[5]

"To establish that a violation of the FCRA was willful, the 'plaintiff must show that a defendant knowingly and intentionally committed an act in conscious disregard for the rights of others, but need not show malice or evil motive.'" *Jenkins*, 2017 WL 1325369, at *7 (quoting *Northrop v. Hoffman of Simsbury, Inc.*, 12 F. App'x 44, 50 (2d Cir. 2001)).

> Courts in this Circuit have held that a defendant acts willfully under the FCRA where the defendant "intentionally misled consumers or concealed information from them." . . . In contrast, "the mere failure to correct a plaintiff's inaccurate credit information, even after notification of the inaccuracy does *not* constitute a willful failure to comply with the FCRA."

*Id.* (quoting *George v. Equifax Mortg. Servs.*, No. 06-CV-971, 2010 WL 3937308, at *2 (E.D.N.Y. Oct. 5, 2010)) (emphasis in original).

Here, Jackling cannot show that HSBC willfully violated the FCRA.

First, the ACDV forms reflect that HSBC promptly investigated the disputes and responded to TransUnion within a few days. ECF No. 62-9 at 4-5. Prompt investigation cuts against a finding of willfulness. *See id.*

Second, Jackling's own evidence shows that HSBC responded to his communications throughout the years and ultimately (albeit belatedly) corrected its reporting. ECF No. 69, ¶ 26, 69-16 at 5. HSBC's responsiveness also cuts against a finding of willfulness. *See Trikas*, 351 F. Supp. 2d at 44-45 (holding that a furnisher did not act willfully where it "sent several letters to Plaintiff to address his concerns" and "initiated its investigation almost immediately" after receiving notices of dispute from CRAs).

Third, there is no evidence that HSBC "intentionally mislead or concealed information" from Jackling. *George*, 2010 WL 3937308, at *2.

---

[5] Claim 1 also alleged a willful violation, but summary judgment has already been entered as to that claim.

Finally, Jackling's Response in Opposition to HSBC's Motion for Summary Judgment makes no argument that HSBC willfully violated the FCRA, and his willfulness claims in his Complaint did not allege any additional facts beyond those contained in his negligence claims. Accordingly, summary judgment is GRANTED in HSBC's favor as to Jackling's second and third claims for willful violation of the FCRA.

To sum up the FCRA claims, summary judgment is GRANTED in favor of HSBC as to Jackling's first and fourth claims because HSBC did not receive notice of the July 2014 dispute at issue in those claims from a CRA.

Summary judgment is GRANTED in favor of HSBC as to Jackling's second and third claims because he has not shown that HSBC willfully failed to conduct a reasonable investigation following receipt of the December 2014 and January 2015 ACDVs.

As to Jackling's fifth and sixth claims, summary judgment is GRANTED in favor of HSBC as to the 2010 forbearance payments, and as to the issue of emotional damages. Summary judgment is DENIED as to the limited issues of whether HSBC reasonably investigated the 2011 modification payments, and whether Jackling suffered economic damages in the form of credit denials from Dorshcel Toyota and Cortese Ford due to HSBC's reporting and investigation of those payments following receipt of the December 2014 and January 2015 ACDVs.

### III.    Claim 7: Breach of Contract

Jackling asserts that HSBC breached the Jacklings' original loan documents by failing to credit him for a $4,780.17 payment he allegedly made on December 23, 2010. ECF No. 37 at 74-77. However, as HSBC explains, and the payment history shows, Jackling did not make such a payment. ECF No. 62-10, ¶¶ 61-67. Rather, HSBC advanced $4,780.17 to pay property taxes. *Id.* Jackling separately paid the property taxes himself, and HSBC consequently received a refund. *Id.* HSBC then zeroed-out the advance balance it had created after advancing the $4,780.17. *Id.*

Jackling also claims that HSBC breached the Loan Modification Agreement by improperly capitalizing $2,682.96 in unpaid interest. ECF No. 37, ¶ 78. However, the capitalization of the $2,682.96 was a *term* of the Loan Modification Agreement that Jackling signed, ECF No. 62-10, ¶ 62, and thus cannot be a breach.

In any case, Jackling makes no arguments as to his breach of contract claim in his Response in Opposition to HSBC's Motion for Summary Judgment. Accordingly, summary judgment is GRANTED in favor of HSBC as to Jackling's seventh claim.

## IV. Claim 8: Violation of TILA

Jackling claims that HSBC violated 15 U.S.C. § 1638(f) of TILA by failing to send him his monthly mortgage statements between August 2014 and March 2016, during the pendency of this lawsuit. ECF No. 37, ¶¶ 80-85. He argues that he is entitled to actual or statutory damages. ECF No. 69-25, ¶¶ 17-18.

HSBC admits that it did not send him statements during those months but argues that it is entitled to summary judgment as a matter of law because TILA does not allow for statutory damages for violations of § 1638(f) and because Jackling cannot show detrimental reliance to entitle him to actual damages. Indeed, Jackling was able to pay his mortgage for each of the months that he did not receive the statements. ECF No. 62-31 at 27. Because Jackling presents no allegations, arguments, or evidence as to actual damages, nor any legal authority entitling him to statutory damages, summary judgment is GRANTED in favor of HSBC as to Jackling's eighth claim. *See Marais v. Reimer Law Co*., No. 2:17-CV-922, 2018 WL 1911251, at *2 (S.D. Ohio Apr. 23, 2018) ("Defendants are correct that statutory damages are not available for claims brought for violations of TILA under 15 U.S.C. 1638(f).").

## V.     Claim 9: Relief under HAMP

Jackling claims that he is entitled to certain relief under HAMP, such as a reduction in his principal, but cites no specific provisions of HAMP supposedly entitling him to such relief. ECF No. 37, ¶¶ 86-88. HSBC attests that it did not participate in HAMP and so any HAMP claims are not applicable to it. ECF Nos. 62-1, ¶¶ 76-68, 62-10, ¶ 68. Jackling does not dispute this contention in his response to HSBC's Statement of Undisputed Material Facts. ECF No. 69-24, ¶ 39. Accordingly, summary judgment is GRANTED in favor of HSBC as to Jackling's ninth claim.

## CONCLUSION

For the foregoing reasons, HSBC's Motion for Summary Judgment (ECF No. 62) is GRANTED and judgment is ENTERED in favor of HSBC on Jackling's first, second, third, fourth, seventh, eighth, and ninth claims.

As to Jackling's fifth and sixth claims, summary judgment is GRANTED in favor of HSBC as to the 2010 forbearance payments, and as to the issue of emotional damages. Summary judgment is DENIED as to the limited issues of whether HSBC reasonably investigated the 2011 modification payments following receipt of the December 2014 and January 2015 ACDVs, and whether Jackling suffered economic damages in the form of credit denials from Dorshcel Toyota and Cortese Ford due to HSBC's reporting and investigation of those payments.

IT IS SO ORDERED.

Dated: January 10, 2019
        Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court