EXHIBIT A

In the Matter of:

# WILLIAM T. JACKLING

v

# HSBC BANK USA, NA, et al

# WILLIAM T. JACKLING

*June 05, 2019*





*Video Conferencing and Videography Center*

120 East Avenue, Suite 200 • Rochester, NY 14604

585.546.4920  ■  www.alliancecourtreporting.net  ■  800.724.0836

```
 1

 2              UNITED STATES DISTRICT COURT
                WESTERN DISTRICT OF NEW YORK
 3     - - - - - - - - - - - - - - - - - - - - -
       WILLIAM T. JACKLING,
 4
                    Plaintiff,
 5
                           Civil Action No. 6:15-CV-06148-FPG
 6     v.

 7     HSBC BANK USA, N.A. (USA) and
       HSBC MORTGAGE CORPORATION (USA),
 8
                    Defendants.
 9     - - - - - - - - - - - - - - - - - - - - -

10
       Continuing Deposition Upon Oral Examination of:
11
                      William T. Jackling
12

13     Location:     Phillips Lytle, LLP
                     28 East Main Street, Suite 1400
14                   Rochester, New York 14614

15

16     Date:         June 5, 2019

17

18     Time:         2:00 p.m.

19

20

21

22     Reported By:  MARY ELIZABETH PHILLIPS

23                   Alliance Court Reporting, Inc.

24                   120 East Avenue, Suite 200

25                   Rochester, New York 14604
```



Video Conferencing and Videography Center

585.546.4920     ■     www.alliancecourtreporting.net     ■     800.724.0836

```
 1
 2                 A P P E A R A N C E S
 3    Appearing on Behalf of Plaintiff:
 4    Sanford R. Shapiro, Esq.
 5         Forsyth, Howe, O'Dwyer, Kalb & Murphy, P.C.
 6         One South Clinton Avenue, Suite 1000
 7         Rochester, New York   14604
 8         GetShapiro@aol.com
 9
10    Appearing on Behalf of Defendants:
11    Chad W. Flansburg, Esq.
12         Phillips Lytle, LLP
13         28 East Main Street, Suite 1400
14         Rochester, New York   14614
15         cflansburg@phillipslytle.com
16                      *     *     *
17
18
19
20
21
22
23
24
25
```

```
 1                    S T I P U L A T I O N S
 2   WEDNESDAY, JUNE 5, 2019;
 3              (Proceedings in the above-titled matter
 4         commencing at 2:00 p.m.)
 5                       *     *     *
 6              IT IS HEREBY STIPULATED by and between the
 7   attorneys for the respective parties that this
 8   deposition may be taken by the Defendant at this time
 9   pursuant to notice;
10              IT IS FURTHER STIPULATED, that all
11   objections except as to the form of the questions and
12   responsiveness of the answers, be reserved until the
13   time of the trial;
14              IT IS FURTHER STIPULATED, that pursuant to
15   Federal Rules of Civil Procedure 30(e)(1) the witness
16   requests to review the transcript and make any
17   corrections to same before any Notary Public;
18              IT IS FURTHER STIPULATED, that if the
19   original deposition has not been duly signed by the
20   witness and returned to the attorney taking the
21   deposition by the time of trial or any hearing in this
22   cause, a certified transcript of the deposition may be
23   used as though it were the original;
24              IT IS FURTHER STIPULATED, that the
25   attorneys for the parties are individually responsible
```

| | |
|---|---|
| 1 | WILLIAM T. JACKLING - BY MR. FLANSBURG |
| 2 | for their certified transcript charge, including any |
| 3 | expedite or other related production charges in |
| 4 | accordance with Rochester Rules; |
| 5 | AND IT IS FURTHER STIPULATED, that the |
| 6 | Notary Public, Mary Elizabeth Phillips, may administer |
| 7 | the oath to the witness. |
| 8 | *       *       * |
| 9 | (The following exhibit was marked for |
| 10 | identification:  EXH Number 43.) |
| 11 | WILLIAM T. JACKLING, |
| 12 | re-called herein as a witness, first being |
| 13 | re-sworn, continued to testify as follows: |
| 14 | CONTINUING EXAMINATION BY MR. FLANSBURG: |
| 15 | Q.  Good afternoon, Mr. Jackling.  My name is |
| 16 | Chad Flansburg, and we're here today for the |
| 17 | continuation of your deposition.  The same rules that |
| 18 | we previously went over are still in effect.  Do you |
| 19 | understand that? |
| 20 | A.  Yes.  To be honest I don't remember, but |
| 21 | whatever they are. |
| 22 | Q.  Okay.  Well, let me go over them so we're |
| 23 | sure that you understand.  Although we're in an |
| 24 | informal setting, you understand that you're under |
| 25 | oath the same as you would be if this were a courtroom |

```
 1         WILLIAM T. JACKLING - BY MR. FLANSBURG
 2         Q.   Do you believe that charge-off that is
 3    referenced in there is that Target credit card
 4    charge-off?
 5         A.   How would I know?
 6         Q.   Fair enough.  Let me ask this question,
 7    this broader question.
 8         A.   Okay.
 9         Q.   Let me ask this:  Do you have a personal
10    knowledge regarding why the Summit Federal Credit
11    Union denied you credit as indicated in Exhibit 37,
12    personal knowledge?
13         A.   What do you mean by that, do I have any
14    personal knowledge?
15         Q.   So let me ask it even broader then.
16         A.   All right.
17         Q.   Did you speak with anybody from the Summit
18    Federal Credit Union regarding why they denied your
19    credit?
20         A.   No.
21         Q.   Did you speak with anybody in any
22    affiliated organization of Summit Federal Credit Union
23    regarding why you were denied credit relative to
24    Cortese --
25         A.   Yes.
```

```
 1              WILLIAM T. JACKLING - BY MR. FLANSBURG
 2        Q.    -- Ford Lincoln?
 3        A.    Yes.
 4        Q.    Who did you speak with?
 5        A.    The credit manager at Cortese.
 6        Q.    At Cortese, but Cortese you would agree
 7  with me is not part of Summit Federal Credit Union.
 8        A.    Right, but he deals with these people all
 9  the time, and he said the same thing.
10        Q.    And we'll get to that.  We'll get to that.
11  My question I just want to talk about Summit Federal
12  Credit Union.  Did you speak with anybody at Summit
13  Federal Credit Union or any affiliate of Summit Credit
14  Union regarding why you were denied credit?
15              MR. SHAPIRO:  Form of the question.  I
16  don't know what you mean by an affiliate.
17        A.    Cortese.
18        Q.    Let me re-ask it.  And to simplify, let me
19  just see if you agree with this.  You didn't speak
20  with anybody from the Summit Federal Credit Union
21  regarding why you were denied credit as indicated in
22  Exhibit 37, the denial of credit dated February 13th,
23  2015; right?
24        A.    Yup.
25        Q.    So --
```

|     | WILLIAM T. JACKLING - BY MR. FLANSBURG |
| --- | --- |
| 1   | |
| 2   | A.  I talked to -- why would I talk to them? |
| 3   | MR. SHAPIRO:  He's answered the question |
| 4   | before.  His answer was no.  He answered the question |
| 5   | about four questions ago. |
| 6   | Q.  All right.  So you didn't speak with |
| 7   | anybody. |
| 8   | A.  I spoke to Cortese.  I told you that. |
| 9   | Q.  Absent Cortese, you didn't speak with |
| 10  | anybody else. |
| 11  | A.  No.  And I asked him why they denied it, |
| 12  | and he put it in writing. |
| 13  | Q.  All right.  I'm going to go to your |
| 14  | affidavit.  Next is Exhibit 20. |
| 15  | A.  Okay. |
| 16  | Q.  That's also referenced in that paragraph D |
| 17  | as in dog.  Can you identify what that is? |
| 18  | A.  T&D Auto Finance statement of credit |
| 19  | denial, termination, on charge whatever that means. |
| 20  | MR. SHAPIRO:  Or change. |
| 21  | A.  Or change. |
| 22  | Q.  So would you agree with me that this is a |
| 23  | notification from TD Auto Finance relative to a credit |
| 24  | request for your potential purchase of a vehicle from |
| 25  | Cortese Ford? |

WILLIAM T. JACKLING - BY MR. FLANSBURG

A. Yes.

Q. Okay. This also denies you credit; right?

A. Yes.

Q. Did you speak with anybody from TD Auto Finance regarding why you were denied credit?

A. I don't believe so. I go through the credit bureau. That's the guy that I was talking to, the credit manager at Cortese. And he said, "As long as the mortgage is on your thing, you're not going to get credit other than if Pat can get it for you." And this came from TransUnion.

Q. So you would agree with me that you have no personal knowledge why TD Auto made the decision to deny you credit?

MR. SHAPIRO: Other than the notice that's here?

Q. Yeah, other than this notice.

A. I do have personal knowledge because I work with credit all the time, and you have to realize when any credit people read a credit thing, the first thing they see is your mortgage. And if you haven't paid your mortgage or the bank says you haven't paid your mortgage, it's a done deal. You aren't going to get credit. And they even put that in writing.

```
 1              WILLIAM T. JACKLING - BY MR. FLANSBURG
 2   just a mistype because he said he sent it out to five
 3   banks, and I'm sure I got back five letters.
 4        Q.   But you don't have any knowledge of what
 5   Exhibit 39 is other than what it says in there; right?
 6        A.   That's right.
 7        Q.   You can testify that you didn't apply for
 8   credit at Valenti Ford, Mystic, Connecticut, did you?
 9        A.   Not that I know of.  No, I did not.
10        Q.   And since the document is dated March 6th,
11   2015, that is a time period much later than when you
12   were at Cortese in February of 2015; right?
13        A.   I believe it is, yeah.
14        Q.   Now, based on that, would you agree with
15   me that this denial of credit is not connected to any
16   credit application you made at Cortese?
17        A.   You're stretching my memory.
18             MR. SHAPIRO:  It's either yes, no, or you
19   don't remember.
20        A.   I don't remember.  I believe this would be
21   Cortese, but I'd have to ask them; you know what I
22   mean?  I'd have to ask him where he sent it.  The name
23   doesn't mean anything to me.
24             THE WITNESS:  Can we write that one down?
25        Q.   Now, did you ever speak with anybody at
```

```
```

WILLIAM T. JACKLING - BY MR. FLANSBURG

Fifth Third Bank regarding why you were denied credit?

A. No.

Q. Now, you've testified that you did have a conversation with somebody at Cortese why you were denied credit; right?

A. Yes.

Q. And who did you speak with?

A. Credit manager.

Q. Do you remember what his name was?

A. No, I don't.

Q. How many conversations did you have with him regarding why you were denied credit?

A. Maybe three or four.

Q. Always with the same person?

A. Yes.

Q. Was it ever with anybody else other than this credit manager?

A. No.

Q. Do you know if this credit manager is still at Cortese?

A. No, I don't.

Q. When is the last time you've had any conversation with this person at Cortese?

A. Probably 2015.



1
2           C E R T I F I C A T I O N
  STATE OF NEW YORK:
3 COUNTY OF MONROE:

4           I, MARY ELIZABETH PHILLIPS, do hereby
5 certify that the foregoing testimony was duly sworn
6 to; that I reported in machine shorthand the foregoing
7 pages of the above-styled cause, and that they were
8 produced by computer-aided transcription (CAT) under
9 my personal supervision and constitute a true and
10 accurate record of the testimony in this proceeding;
11           I further certify that the witness
12 requests to review the transcript;
13           I further certify that I am not an
14 attorney or counsel of any parties, nor a relative or
15 employee of any attorney or counsel connected with the
16 action, nor financially interested in the action;
17           WITNESS my hand in the City of Rochester,
18 County of Monroe, State of New York.
19
20 *Mary Elizabeth Phillips*

MARY ELIZABETH PHILLIPS,
23 Freelance Court Reporter and
Notary Public No. 10SE6156762
24 in and for Monroe County, New York
25



ALLIANCE COURT REPORTING, INC.
Video Conferencing and Videography Center
585.546.4920   ■   www.alliancecourtreporting.net   ■   800.724.0836