UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────────────────

WILLIAM T. JACKLING,

        Plaintiff,

    v.

HSBC BANK USA, N.A., and HSBC MORTGAGE
CORPORATION (USA),

        Defendants.

───────────────────────────────────────────

Case No. 6:15-cv-06148-FPG


**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION *IN LIMINE***


Respectfully submitted,

PHILLIPS LYTLE LLP
Attorneys for Defendants
*HSBC Bank USA, N.A., AND HSBC*
*Mortgage Corporation (USA)*
28 East Main Street
Suite 1400
Rochester, New York 14614-1935
Telephone No. (585) 238-2000


Chad W. Flansburg
– Of Counsel –

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES........................................................................................ iii

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS .......................................................................................... 2

    A.    Partial Dismissal of Jackling's Claims ............................................................ 2

    B.    May 24, 2019 Pretrial Order ............................................................................ 3

    C.    Plaintiff's Incomplete Pretrial Submissions .................................................. 4

ARGUMENT ............................................................................................................... 5

POINT I    JACKLING SHOULD BE PRECLUDED FROM INTRODUCING
    EVIDENCE RELATED TO THE FOUR CREDIT DENIALS AND
    PROXIMATE CAUSE ................................................................................. 5

    A.    Jackling failed to authenticate the four hearsay credit denial letters
    and cannot offer them trial ............................................................................. 5

    B.    Jackling will be unable to lay any foundation for the credit denial
    letters, rendering them inadmissible hearsay ...................................... 6

POINT II    JACKLING SHOULD BE PRECLUDED FROM CALLING HIS
    FORMER ATTORNEY, DAVID M. KAPLAN, ESQ., TO TESTIFY ....... 7

    A.    Kaplan has no personal knowledge of the facts of this case, and
    his testimony would be irrelevant ...................................................... 8

    B.    Kaplan would testify regarding privileged settlement negotiations.....10

    C.    The redacted confidential settlement report violates the rule of
    completeness ..................................................................................10

POINT III    JACKLING SHOULD BE PRECLUDED FROM CALLING
    SHEILA FERGUSON AND JANET PYZER YOUNG TO
    TESTIFY BECAUSE THEIR TESTIMONY WOULD BE
    WHOLLY IRRELEVANT TO THE ISSUES IN THIS CASE ..................11

POINT IV    JACKLING SHOULD BE PRECLUDED FROM CALLING JULES
    STEELE TO TESTIFY BECAUSE HE WOULD BE TESTIFYING
    AS AN UNDISCLOSED EXPERT, AND BECAUSE HIS TESTIMONY
    WOULD BE SPECULATIVE AND WHOLLY IRRELEVANT TO
    THE REMAINING ISSUES AT TRIAL ...................................................13

A.      Jules Steele's proffered testimony constitutes expert testimony under Federal Rule of Evidence 701.................................................13

B.      Jules Steele's expert testimony should be precluded because Jackling failed to timely comply with expert discovery disclosure rules .............................................................................................16

C.      Jules Steele's expert testimony should be precluded because it is irrelevant...........................................................................................17

POINT V     JACKLING SHOULD BE PRECLUDED FROM TESTIFYING AS TO DAMAGES AND LATE MORTGAGE PAYMENTS BECAUSE HIS TESTIMONY WOULD BE SPECULATIVE AND WHOLLY IRRELEVANT TO THE ISSUES IN THIS CASE....................................18

A.      Jackling is unable to testify as to damages related to the alleged credit denials...................................................................................18

B.      Jackling proffered testimony as to late mortgage payments and deposit amounts is irrelevant...........................................................18

CONCLUSION ........................................................................................................19

# TABLE OF AUTHORITIES

Page

**Cases**

*Bank of China, N.Y. Branch v. NBM LLC,*
    359 F.3d 171 (2d Cir. 2004) ................................................................ 14, 15

*Beech Aircraft Corp. v. Rainey,*
    488 U.S. 153 (1988) ....................................................................................11

*Cash Energy, Inc. v. Weiner,*
    81 F.3d 147 (1st Cir. 1996) ......................................................................18

*Daubert". Munoz v. U.S.,*
    No. 07-CV-2080 (ILG), 2008 WL 2942861 (E.D.N.Y. 2008) ......................14

*Daubert v. Merrell Dow Pharm., Inc.,*
    509 U.S. 579 (1993) ...................................................................................14

*Dugan v. R. J. Corman Railroad Co.,*
    344 F.3d 662 (7th Cir. 2003) .....................................................................11

*Dynamic Concepts, Inc. v. Tri-State Surgical Supply and Equip. Ltd.,*
    715 F. App'x 5 (2d Cir. 2017) ....................................................... 13, 15, 16

*Federal Housing Finance Agency for Federal National Mortgage Association v.*
    *Nomura Holding America, Inc.,*
    873 F.3d 85 (2d Cir. 2017) .............................................................. 8, 9, 11

*Franco v. Ideal Mortg. Bankers,*
    No. 07–CV–3956 (JS)(AKT), 2009 WL 3756664 (E.D.N.Y. 2009) ..............10

*Frintner v. TruePosition,*
    892 F. Supp. 2d 699 (E.D. Pa. 2012) ................................................ 8, 9, 11

*Gervacio v. Zall,*
    345 F. App'x 638 (2d Cir. 2009)................................................................6, 7

*Grant Thornton v. Syracuse Sav. Bank,*
    961 F.2d 1042 (2d Cir. 1992) ....................................................................10

*Grigoryan v. Experian Information Solutions, Inc.,*
    84 F. Supp.3d 1044 (C.D. Ca. 2014) ......................................................... 5

*Hargett v. Nat'l Westminster Bank, USA,*
    78 F.3d 836 (2d Cir. 1996)........................................................................6, 7

*House v. Kent Worldwide Machine Works, Inc.*,
    359 F. App'x 206 (2d Cir. 2010) ................................................................ 5

*Kim v. BMW Financial Servs., NA, LLC*,
    702 F. App'x 561 (9th Cir. 2017) ...............................................................14

*Manko v. United States*,
    63 F. App'x 570 (2d Cir. 2003) .......................................................... 10, 11

*Orr v. Bank of America, NT & SA*,
    285 F.3d 764 (9th Cir. 2002) ...........................................................5, 6, 7

*In re Rezulin Products Liability Litigation*,
    309 F. Supp. 2d 531 (S.D.N.Y. 2004) ............................................... 8, 9, 11

*In re Tremont Securities Law and Insurance Litigation*,
    699 F. App'x 8 (2d Cir. 2017) ...................................................................10

*U.S. v. Conn.*,
    297 F.3d 548 (7th Cir. 2002) .....................................................................15

*U.S. v. Kaziu*,
    559 F. App'x 32 (2d Cir. 2014) ................................................................14

*U.S. v. Reyes*,
    384 F. App'x 37 (2d Cir. 2010) ......................................................... 14, 15

*United States v. Cuti*,
    720 F.3d 453 (2d Cir. 2013) ............................................................... 13, 14

*United States v. Garcia*,
    413 F.3d 201 (2d Cir. 2005) ............................................................... 13, 15

*United States v. Peoples*,
    250 F.3d 630 (8th Cir. 2001) .....................................................................15

**Statutes**

Fair Credit Reporting Act (FCRA) ................................................................ 5

Fed. R. Civ. P. 26 .......................................................................... 14, 16, 17

Fed. R. Evid. 106 ......................................................................................11

Fed. R. Evid. 401 ................................................................ 8, 9, 11, 17, 19

Fed. R. Evid. 402 ............................................................................... 11, 19

Fed. R. Evid. 701 ............................................................... 13, 14, 15, 16, 17

Fed. R. Evid. 702 ...................................................................13, 14, 15, 17

Fed. R. Evid. 801 ............................................................................ 6

Fed. R. Evid. 803 ............................................................................ 6

Fed. R. Evid. 901 ............................................................................ 5

Fed. R. Evid. 902 ............................................................................ 6

Truth in Lending Act (TILA)............................................................ 9

**Other Authorities**

21 Charles A. Wright & Kenneth W. Graham, Jr., *Federal Practice and
Procedure* § 5077 (1977 & Supp.) ...................................................11

## PRELIMINARY STATEMENT

Defendants HSBC Bank USA, N.A. ("HSBC Bank") and HSBC Mortgage Corporation (USA) ("HSBC Mortgage") (collectively "HSBC" and "Defendants"), submit this memorandum of law in support of their motion *in limine* to preclude Plaintiff William T. Jackling ("Jackling") from: 1) submitting evidence relating to the four (4) alleged credit denial letters at issue in this action (the September 14, 2014, Dorschel North credit denial; the February 13, 2015, Summit Federal Credit Union denial for vehicle financing from Cortese Ford Lincoln Mercury; the February 23, 2015, TD Auto Finance denial for vehicle financing from Cortese Ford; and the March 6, 2015, Fifth Third Bank denial for vehicle financing from Valenti Ford) (collectively the "credit denial letters"); 2) from calling as a witness his former counsel, David M. Kaplan, Esq. to testify as a witness to matters and statements provided to Hon. Marion W. Payson in August 2017, as part of judicially sponsored settlement discussions; 3) from calling witnesses Sheila Ferguson and Janet Pyzer Young to testify regarding HSBC's alleged policy with respect to closing documents; 4) from Jackling testifying that he was never late with his mortgage payments and damages related to alleged credit denials from Dorschel North and Cortese Ford; and 5) from calling witness Jules Steele to testify regarding damages.

After repeatedly failing to abide by this Court's orders and submitting pretrial submissions that seek to admit blatantly irrelevant and improper evidence, it is clear that Jackling's intent in this matter is to focus on the default payments made to HSBC and other matters outside what this Court has deemed the remaining relevant issues for trial. In the January 10, 2019, Summary Judgment Decision and Order ("Summary Judgment Order"), this Court limited the issues for trial to two: (1) whether defendants reasonably investigated

the 2011 modification payments following receipt of the December 2014 and January 2015 ACDVs; and (2) whether Jackling suffered actual economic damages in the form of credit denials from Dorschel North and Cortese Ford. *See* ECF No. 74. In defiance of the Summary Judgment Order, Jackling offers witnesses to testify regarding HSBC's alleged closing documents, thereby disregarding this Court's direction, in an attempt to focus the trial on matters previously dismissed and completely irrelevant. In addition to this evidence outside the narrow scope of this trial, Jackling also seeks to improperly admit the unauthenticated and hearsay credit denial letters, testimony regarding settlement negotiations, and previously undisclosed expert testimony that would prejudice Defendants. For the reasons discussed below, Jackling should be precluded from admitting any of this evidence.

## STATEMENT OF FACTS[1]

### A. Partial Dismissal of Jackling's Claims

On April 26, 2018, HSBC moved for summary judgment with respect to all of Jackling's claims. On summary judgment, Jackling provided no authenticated admissible evidence to support any alleged credit denials. The Court, in its discretion, accepted hearsay letters concerning the four credit denials based on the possibility that Jackling could provide admissible evidence at trial. *See* ECF No. 74, at 13-14. In the Summary Judgment Order, this Court dismissed in their entirety Plaintiff's first, second, third, fourth, seventh, eighth, and ninth claims as set forth in the Third Amended Complaint. *See* ECF No. 74, at 21.

---

[1] Inasmuch as this Court is familiar with the background facts of this action, the facts set forth herein are those from this Court's Decision and Order, dated January 10, 2019, and will include only those facts relevant to this motion and the issues set forth by this Court at the pretrial conference on Friday, August 2, 2019.

With regard to the fourth and fifth claims, the Court specifically dismissed the portions of those claims relating "to the 2010 forbearance payments" on the grounds that Jackling failed to establish that HSBC actually executed the Altered Forbearance Agreement and agreed to refrain from reporting with respect to payments owed during the Forbearance Agreement period. *See* ECF No. 74, at 8-9. Thus, the Court dismissed Jackling's claims that HSBC improperly reported as untimely the payments made during the forbearance period. *See id.* The Court also specifically limited the issues at trial to whether HSBC reasonably investigated the 2011 modification payments following receipt of the December 2014 and January 2015 ACDVs, and whether, as discussed above, Jackling suffered actual economic damages in the form of credit denials from Dorschel North and Cortese Ford. *See* ECF No. 74, at 21. Thus, the only issues remaining at trial are (1) whether defendants reasonably investigated the 2011 modification payments following receipt of the December 2014 and January 2015 ACDVs; and (2) whether Jackling suffered actual economic damages in the form of credit denials from Dorschel North and Cortese Ford.

**B.** **May 24, 2019 Pretrial Order**

In its May 24, 2019 Pretrial Order, this Court set a date for a pretrial conference of August 2, 2019, and set forth a deadline for the parties' pretrial submissions of "at least TWO WEEKS before the pretrial conference." ECF No. 80, at 1. Thus, the parties' pretrial submissions were due on Friday, July 19, 2019. While Defendants complied with the Court's deadline by filing their pretrial statement with exhibits on July 19, 2019, Jackling failed to do so until after Defendants' moved to dismiss the action, and this Court, noting Jackling's failure to file, ordered him to do so by July 26, 2019. *See* ECF Nos. 85-86.

## C. Plaintiff's Incomplete Pretrial Submissions

On July 29, 2019, Jackling filed, among other things, a witness list, which included himself, Jules Steele, David M. Kaplan, Esq., Sheila Ferguson, and Janet Pyzer Young. *See* ECF No. 88. Two days after the Court's extended deadline to submit pretrial submissions, Jackling filed a pre-trial statement. *See* ECF No. 91. In his description of the case therein, Jackling concedes that the only "issues remaining after the Court's Summary Judgment Order and Decision are: (a) whether HSBC reasonably investigated the 2011 modification payments following receipt of the December 2014, and January 2015, ACDVs, and (b) whether Mr. Jackling suffered economic damages in the form of credit denials from Dorschel Toyota and Cortese Ford due to HSBC's reporting and investigation of those payments." ECF No. 91, at 1. Jackling further asserted that he "[did] not intend to introduce any expert witnesses . . . at trial." *Id.*

In his pre-trial submission, Jackling further set forth the prospective witnesses he intended to call at trial, along with a proffer of their expected testimony.[2] Specifically, Jackling stated that he would testify that he "was never late with his mortgage payments," and always had "sufficient amounts on deposit with HSBC to cover monthly payments." *Id.* at 3. David M. Kaplan, Esq. ("Kaplan") would testify as to "statements on the annexed (redacted) copy of the information he provided to Hon. Marian W. Payson, in August, 2017"[3]; Jules Steele ("Steele") would testify that "an individual's credit score history is given

---

[2] At the pretrial conference Plaintiff' counsel advised that Anachristina Ammitzboll was unavailable to testify in that she would be in Florida at the time of trial and would not be called as a witness at trial. Ms. Ammitzboll was disclosed as a witness in Jackling's witness list (ECF No. 84-1), but not disclosed as a witness in his subsequently filed Pre-Trial Submission. (ECF No. 91, p. 2-3).

[3] Plaintiff's counsel conceded at the pretrial conference that the letter that will be the subject of Mr. Kaplan's testimony (ECF No. 91, p. 13-16) was the confidential settlement report submitted to Hon. Marian W. Payson as part of judicial settlement discussions she sponsored. *See* ECF Nos. 48 & 52; Flansburg Decl. ¶ 4. Jackling's counsel further conceded that this confidential settlement report was redacted to remove language indicating that it was submitted for settlement purposes only. *See* Flansburg Decl. ¶ 4.

major weight in placing homeowners' insurance and automobile insurance"; and Sheila

Ferguson ("Ferguson") and Janet Pyzer Young ("Young") would testify as to certain

aspects of HSBC's alleged policy governing closing documents. *Id.*

For the reasons set forth below, Jackling should be precluded from submitting

evidence in any form as to these matters.

## ARGUMENT

## POINT I

## JACKLING SHOULD BE PRECLUDED FROM INTRODUCING EVIDENCE RELATED TO THE FOUR CREDIT DENIALS AND PROXIMATE CAUSE

**A.** **Jackling failed to authenticate the four hearsay credit denial letters and cannot offer them trial**

Federal Rules of Evidence 901 requires "that documents be authenticated

before they can be admitted into evidence." *House v. Kent Worldwide Machine Works, Inc.*,

359 F. App'x 206, 207 (2d Cir. 2010), citing Fed. R. Evid. 901(a) ("The failure of counsel to

adhere to this simple directive to [authenticate] the documents . . . is inexcusable"); *see also*

*Orr v. Bank of America, NT & SA*, 285 F.3d 764, 777 (9th Cir. 2002) (finding that a document

was inadmissible on the ground that, among other things, plaintiff failed to authenticate);

*Grigoryan v. Experian Information Solutions, Inc.*, 84 F. Supp.3d 1044, 1063 (C.D. Ca. 2014)

(FCRA case in which the court held that several documents, including a bank letter, were

inadmissible for failure to authenticate).

Here, Jackling has failed to disclose any witness that at the time of trial will

authenticate the four credit denial letters in this action. Jackling has provided no evidence

asserting that the documents were what they purported to be. For example, Jackling has

failed to identify a single witness from Dorschel North, Summit Federal Credit Union, TD Auto Finance, or Fifth Third Bank to testify at trial.  *See* ECF Nos. 88 & 91.

**B.      Jackling will be unable to lay any foundation for the credit denial letters, rendering them inadmissible hearsay**

The Federal Rules of Evidence bar admission of hearsay evidence unless it falls within one of the exceptions outlined in Rule 803.  *See* Fed. R. Evid. 801-803.  To qualify as a "record[ ] of a regularly conducted activity" or "business record" exception, a party seeking to admit evidence is required to proffer "testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification."  Fed. R. Evid. 803(6)(D).

Here, the four credit denial letters should be excluded inasmuch as Jackling has failed to identify any witness that will be able to lay any kind of foundation for those documents at trial rendering them inadmissible hearsay.  Jackling failed to identify any "custodian or [otherwise] qualified witness" that could testify as to the creation or reliability of the credit denial letters.  *See Gervacio v. Zall*, 345 F. App'x 638, 639-640 (2d Cir. 2009) (finding that consideration of certain evidence "would have been inappropriate in light of plaintiff's failure to lay any foundation for the applicability of a hearsay exception, or even to establish what the [evidence] purports to depict."); *Hargett v. Nat'l Westminster Bank, USA*, 78 F.3d 836, 841-42 (2d Cir. 1996) (upholding district court's finding that document was "inadmissible hearsay" inasmuch as plaintiff "failed to establish a foundation for its admission as a business record" where "the only witness questioned about the document, testified that he did not recall the circumstances under which the document was created"); *Orr*, 285 F.3d at 777 ("[The document] lacks foundation because [plaintiff] has failed to submit an affidavit from [the purported author] stating that he wrote the memo.

[Furthermore, another individual's] affidavit does not lay a foundation for [the document because he] neither wrote the memo nor witnessed [the purported author] do so.")[4]

Notably, Jackling himself would be unable to testify regarding the admissibility of credit denial letters. At Jackling's June 5, 2019 deposition, he testified that he did not at any point speak with anyone at Summit Federal Credit Union regarding the February 13, 2015 credit denial for the purchase of a vehicle through Cortese Ford Lincoln Mercury. *See* Ex. A, at 85:9-87:12. Jackling similarly testified that he never spoke with anyone from TD Auto Finance regarding the February 23, 2015 credit denial for a vehicle through Cortese Ford, *see* Ex. A, at 87:13-88:12, or with anyone from Fifth Third Bank regarding the March 6, 2015 credit denial, *see* Ex. A, at 93:25-94:3. And even if he had, his testimony about what they said would still be hearsay.

Because of Jackling's inability to lay a foundation for the credit denial letters, they should be precluded as unauthenticated and inadmissible hearsay.

## POINT II

### JACKLING SHOULD BE PRECLUDED FROM CALLING HIS FORMER ATTORNEY, DAVID M. KAPLAN, ESQ., TO TESTIFY

Jackling seeks to proffer his former attorney David M. Kaplan, Esq. ("Kaplan") to testify at trial. *See* ECF No. 88. Kaplan's testimony should be precluded on at least four grounds. First, Kaplan has no personal knowledge of the events that give rise to this case. Second, the statements about which Jackling seeks to question Kaplan were made during settlement negotiations. Third, Kaplan's proffered testimony is irrelevant to

---

[4] In the event that Jackling is able to proffer a witness from Dorschel or Cortese to testify regarding the credit denial letters, such witnesses would not be able to authenticate nor provide a foundation for the credit denials letters from Summit Federal Credit Union, TD Auto Finance, or Fifth Third Bank inasmuch as any such witness would not be able to establish that he or she was a "custodian" of the document, *Gervacio*, 345 F. App'x at 639-640, or "wrote the memo," *Orr*, 285 F.3d at 777.

this matter.  Lastly, the redacted confidential settlement report being offered violates the rule of completeness.

**A.      Kaplan has no personal knowledge of the facts of this case, and his testimony would be irrelevant**

Under Federal Rules of Evidence 401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.  Fed. R. Evid. 401; *see Federal Housing Finance Agency for Federal National Mortgage Association v. Nomura Holding America, Inc.*, 873 F.3d 85, 152-53 (2d Cir. 2017) (upholding District Court's decision precluding evidence on a motion in limine because the evidence was irrelevant).  Evidence that is irrelevant risks confusing the jury, and admission of such would be unfairly prejudicial to the non-offering party.  *See Frintner v. TruePosition*, 892 F. Supp. 2d 699, 707 (E.D. Pa. 2012); *see also In re Rezulin Products Liability Litigation*, 309 F. Supp. 2d 531, 545 (S.D.N.Y. 2004) (precluding evidence that, even if relevant, would likely "prejudice and confuse the trier [of fact]").

Here, Kaplan's proffered testimony fails to satisfy Rule 401.  Kaplan served as Jackling's attorney until Matthew D. Nafus substituted in as counsel by way of consent order granting substitution of attorney, filed November 16, 2017.  *See* ECF No. 59.  Nafus was subsequently replaced by Sanford Shapiro in April 2019.  *See* ECF Nos. 77 and 83. Kaplan has no personal knowledge of the events giving rise to this action, and therefore, cannot testify to any fact or matter that is relevant to this action.  In fact, Jackling intends to call Kaplan to "testify to the statements on the annexed (redacted) copy of the information he provided to Hon. Marian W. Payson in August 2017."  ECF No. 91, at 3.  The "information" Jackling refers to is a redacted confidential settlement report Kaplan prepared

as part of settlement negotiations that occurred earlier in this case.  *See* ECF Nos. 91, 47 &

52; Flansburg Decl. ¶ 3.[5]

The vast majority of the confidential settlement report deals with issues that

are irrelevant to this action based on this Court's prior decisions.  The confidential

settlement report discusses Jackling's delinquent payments, and even includes discussion of

his Truth in Lending Act ("TILA") claims.  *See* ECF No. 91.  This Court specifically

dismissed Jackling's TILA claims in the Summary Judgement Order and unequivocally

limited the issues of this action to two: (1) whether defendants reasonably investigated the

2011 modification payments following receipt of the December 2014 and January 2015

ACDVs; and (2) whether Jackling suffered actual economic damages in the form of credit

denials from Dorschel North and Cortese Ford.  *See* ECF No. 74.  The confidential

settlement report does not discuss Defendants' investigation efforts in any meaningful way,

and does not even mention the Dorschel North or Cortese Ford credit denials.  Proffering

Kaplan is just another attempt by Jackling to make this case about issues this Court has

previously dismissed.

Thus, Kaplan's testimony is irrelevant to the two remaining issues at trial and

should be precluded as such.  *See* Fed. R. Evid. 401; *see generally Federal Housing Finance

Agency for Federal National Mortgage Association*, 873 F.3d at 152-53.  Further, permitting

Kaplan to testify would certainly "expose[ ] [the jury] to unfairly prejudicial, confusing, or

irrelevant evidence."  *Frintner*, 892 F. Supp. 2d 699, 707 (E.D. Pa. 2012); *In re Rezulin

Products Liability Litigation*, 309 F. Supp. 2d at 545.

---

[5] "Flansburg Decl." refers to the Declaration of Chad W. Flansburg, dated August 15, 2019.

**B.     Kaplan would testify regarding privileged settlement negotiations**

It is well-settled that documents and conversations relating to settlement negotiations are generally inadmissible at trial.  *See In re Tremont Securities Law and Insurance Litigation*, 699 F. App'x 8, 15 (2d Cir. 2017); *Manko v. United States*, 63 F. App'x 570, 572 (2d Cir. 2003) ("the district court did not abuse its discretion in ruling that [evidence of the settlement between the parties'] probative value is substantially outweighed by the danger of confusion of the issues and of misleading the jury"); *Franco v. Ideal Mortg. Bankers*, No. 07–CV–3956 (JS)(AKT), 2009 WL 3756664, at *2 (E.D.N.Y. 2009) ("The Court agrees with Defendants that it would be improper for Plaintiffs to rely on information obtained during the mediation session for *any* purpose") (emphasis in original); *Grant Thornton v. Syracuse Sav. Bank*, 961 F.2d 1042, 1046 (2d Cir. 1992) ("settlement agreement of an ongoing litigation, however, is permissible only where the moving party 'lays a foundation by adducing from other sources evidence indicating that the settlement may be collusive").

As discussed above, Jackling intends to elicit testimony about the confidential settlement report and communications made during confidential settlement negotiations that occurred earlier in this case.  *See* ECF No. 91.  As this Court well knows, settlement negotiations were extensive in this case.  *See* ECF Nos. 48, 51-53, 55-58, & 77.  The confidential settlement report, and all other communications that were part of these extensive settlement negotiations are inadmissible.  Thus, Jackling should be precluded from calling Kaplan to testify at trial.

**C.     The redacted confidential settlement report violates the rule of completeness**

The rule of completeness is a principle of evidence law that when a party introduces part of a writing or an utterance at trial, the adverse party may require the

introduction of any other part to establish the full context. Fed. R. Evid. 106; s*ee also Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 171-172 (1988). The Federal Rules of Evidence which partially codify the doctrine of completeness allow an adverse party to require the introduction at the time of any part of a document is introduced of all the parts which ought in fairness to be considered contemporaneously with it. Fed. R. Evid. 106. The principle underlying the rule of completeness is fundamental fairness. 21 Charles A. Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure* § 5077, at 365 (1977 & Supp.) ("[t]he standard which the judge is to apply to the requested additional material is whether 'it ought in fairness to be considered contemporaneously with' the writing already introduced by the proponent") (citing Fed. R. Evid. 106).

Here, Jackling offering at trial the *redacted* confidential mediation report clearly violates the rule of completeness and is inadmissible. *See Dugan v. R. J. Corman Railroad Co.*, 344 F.3d 662, 669 (7th Cir. 2003) (affirming order precluding affidavit which did not contain actual trust agreement but merely quoted phrases from it).

## POINT III

### JACKLING SHOULD BE PRECLUDED FROM CALLING SHEILA FERGUSON AND JANET PYZER YOUNG TO TESTIFY BECAUSE THEIR TESTIMONY WOULD BE WHOLLY IRRELEVANT TO THE ISSUES IN THIS CASE

Jackling should be precluded from calling witnesses to testify as to wholly irrelevant facts that, if introduced, would almost certainly confuse the jury. See Fed. R. Evid. 401-402; *see generally Federal Housing Finance Agency for Federal National Mortgage Association*, 873 F.3d at 152-53; *Frintner*, 892 F. Supp. 2d 707; *Manko*, 63 F. App'x at 572; *In re Rezulin Products Liability Litigation*, 309 F. Supp. 2d at 545.

Jackling's pretrial submission vaguely states that Ferguson or Young would testify that "that all closing documents had to be signed by an authorized HSPC [sic] representative." ECF No. 91. This testimony is in no way relevant to the two remaining issues in this action. In its Summary Judgment Order, this Court dismissed Jackling's claims related to delinquent payments made during the 2010 forbearance period, and further limited his claims with respect to the 2011 modification payments to whether HSBC reasonably investigated the accuracy of its reporting. *See* ECF No. 74, at 9. The Court also in the Summary Judgment Order determined that it was "undisputed that HSBC never signed the Original Forbearance Agreement." ECF No. 74, at 2, fn. 1. The Modification Agreement is fully executed by the parties. ECF No. 62-28. Likewise the other related mortgage loan documents are each also undisputedly signed by the parties. *See* ECF Nos. 62-11, 62-12, & 62-13. Therefore, even assuming that the "closing documents" Ferguson and Young would testify about are either the forbearance agreement or modification agreement, this testimony concerning HSBC's execution would be irrelevant. The issues here are very narrow and include only (1) whether defendants reasonably investigated the 2011 modification payments following receipt of the December 2014 and January 2015 ACDVs; and (2) whether Jackling suffered actual economic damages in the form of credit denials from Dorschel North and Cortese Ford.

**POINT IV**

**JACKLING SHOULD BE PRECLUDED FROM CALLING JULES STEELE TO
TESTIFY BECAUSE HE WOULD BE TESTIFYING AS AN UNDISCLOSED
EXPERT, AND BECAUSE HIS TESTIMONY WOULD BE SPECULATIVE AND
WHOLLY IRRELEVANT TO THE REMAINING ISSUES AT TRIAL**

**A.    Jules Steele's proffered testimony constitutes expert testimony under Federal Rule
of Evidence 701**

Federal Rule of Evidence 701 provides standards for the admissibility of lay

testimony, and is used by courts to determine whether proffered testimony is lay or expert

testimony.  Rule 701 maintains that

> "[i]f a witness is not testifying as an expert, testimony in the form
> of an opinion is limited to one that is:
>
> (a) rationally based on the witness's perception;
> (b) helpful to clearly understanding the witness's testimony or to
> determining a fact in issue; and
> (c) not based on scientific, technical, or other specialized
> knowledge within the scope of Rule 702."

Fed. R. Evid. 701.  The Second Circuit has recently reiterated the factors considered when

determining whether testimony is expert or lay testimony.  *See Dynamic Concepts, Inc. v. Tri-

State Surgical Supply and Equip. Ltd.*, 715 F. App'x 5, 9-10 (2d Cir. 2017).

> "We have stated, in considering [Rule 701(c) as a] third pre-
> requisite to admissibility under Rule 701, that 'a court must focus
> on 'the reasoning process' by which a witness reached his
> proffered opinion,' and that, to constitute lay opinion, an
> opinion must be the product of 'reasoning processes familiar to
> the average person in everyday life,' rather than 'scientific,
> technical, or other specialized knowledge.'"

*Id.*, at 10, quoting *United States v. Garcia*, 413 F.3d 201, 210 (2d Cir. 2005); *see United States v.

Cuti*, 720 F.3d 453, 459 (2d Cir. 2013) (quoting Fed. R. Evid. 701 advisory committee's

note, 2000 amend.).  In that case, the Second Circuit went on to explain that

> "[t]he purpose of these pre-requisites to admissibility under Rule 701 'is to prevent a party from conflating expert and lay opinion testimony thereby conferring an aura of expertise on a witness without satisfying the reliability standard for expert testimony set forth in Rule 702 and the pre-trial disclosure requirements [for expert testimony]' in Federal Rule of Civil Procedure 26."

*Id.*; *see Bank of China, N.Y. Branch v. NBM LLC*, 359 F.3d 171, 181 (2d Cir. 2004) (quoting Fed. R. Evid. 701 advisory committee's note, 2000 amend.) ("[T]he purpose of Rule 701(c) is 'to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing.'"); *see also U.S. v. Kaziu*, 559 F. App'x 32, 38 (2d Cir. 2014) (considering whether a lay witness could not have attested to the same issues as an expert who "based his testimony on specialized research and training removed from the instant case."; *U.S. v. Reyes*, 384 F. App'x 37, 40 (2d Cir. 2010) (looking to whether testimony is "based on [the witness's] own personal observations" to determine whether it was considered expert or lay testimony). Mischaracterizing an expert witness as a lay witness is an underhanded attempt to evade "the more stringent standards of admissibility applied by Federal Rule of Evidence 702 and the Supreme Court's decision in *Daubert*". *Munoz v. U.S.*, No. 07-CV-2080 (ILG), 2008 WL 2942861, *14 (E.D.N.Y. 2008), *citing Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

Here, Evading Rule 702 is exactly what Jackling attempts to do at trial by proffering Steele as a lay witness to testify "as to damages, that an individual's credit score history is given major weight in placing homeowners' insurance and automobile insurance . . . and that rates and applications for new insurance are weighted accordingly to as much as a 50% increase." ECF No. 91; *see Kim v. BMW Financial Servs., NA*, LLC, 702 F. App'x 561, 563 (9th Cir. 2017) (witness that testified that "derogatory [credit] reports . . . carry serious

consequences, including lower credit scores and a reduced ability to obtain employment," was an expert witness); *U.S. v. Conn.*, 297 F.3d 548, 554 (7th Cir. 2002) ("Lay opinion testimony is admissible only to help the jury or the court to understand the facts about which the witness is testifying *and not to provide specialized explanations or interpretations that an untrained layman could not make if perceiving the same acts or events*"), quoting *United States v. Peoples,* 250 F.3d 630, 641 (8th Cir. 2001) (emphasis added).

    Steele's testimony clearly does not arise from a "reasoning processes familiar to the average person in everyday life," but comes from the "scientific, technical, or other specialized knowledge" he obtained as president of an insurance agency. *Dynamic Concepts, Inc.*, 715 F. App'x at 10; *see* ECF No. 91. Nor does Jackling contend that Steele "personally observed" the events that gave rise to this action. *Reyes*, 384 F. App'x at 40. Thus, even if Steele's testimony satisfied Rule 701 in all other respects (it does not), it constitutes *inadmissible* expert testimony as it is undeniably "based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701(c); *see Dynamic Concepts, Inc.*, 715 F. App'x 5 (upholding district court's finding that plaintiff's witness testimony contained expert testimony "rather than solely lay testimony," and "[b]ecause it was undisputed that the Plaintiffs had not timely complied with expert discovery disclosure rules . . . struck every paragraph in the respective declarations that included any expert testimony."). It is well-settled that "[i]f the opinion rests 'in any way' upon scientific, technical, or other specialized knowledge, its admissibility must be determined by reference to Rule 702, not Rule 701. *Garcia*, 413 F.3d at 215, quoting *Bank of China,* 359 F.3d at 182 n. 12-13. Thus, regardless of how Jackling categorized Steele's testimony, it constitutes expert testimony within the scope of Rule 702.

**B.** **Jules Steele's expert testimony should be precluded because Jackling failed to timely comply with expert discovery disclosure rules**

In *Dynamic Concepts, Inc.*, the Second Circuit upheld the District Court's finding that the plaintiffs' witness evidence contained expert testimony "rather than solely lay testimony." 715 F. App'x at 10 ("the declarations did not simply include descriptions of the underlying programs, but offered opinions designed to situate elements of those programs in the industry as a whole in order to demonstrate that the programs included original"). The Second Circuit also upheld the District Court's decision to preclude all aspects of the witness depositions that constituted expert testimony "[b]ecause it was undisputed that the Plaintiffs had not timely complied with expert discovery disclosure rules . . . struck every paragraph in the respective declarations that included any expert testimony.").

Here, Jackling has similarly failed to comply with expert discovery disclosure rules. First, pursuant to the February 14, 2017 Consent Scheduling Order, "[p]laintiff shall identify any expert witness . . . by May 16, 2017." ECF No. 47. Jackling did not identify any expert witnesses by that deadline. Had Jackling complied with this deadline, Defendants would have had the opportunity to obtain their own expert. To date, however, Jackling has failed to identify any expert witness. In fact, as late as in his pretrial submissions, Jackling stated that he "does not intend to introduce any expert witness . . . at trial." ECF No. 91. Thus, Steele's expert testimony should be precluded for Jackling's failure to comply with Federal Rule of Civil Procedure 26. *See Dynamic Concepts, Inc.*, 715 F. App'x at 10 ("[t]he purpose of these pre-requisites to admissibility under Rule 701 'is to prevent a party from conflating expert and lay opinion testimony thereby conferring an aura of expertise on a witness without satisfying the reliability standard for expert testimony set

forth in Rule 702 *and the pre-trial disclosure requirements [for expert testimony]' in Federal Rule of Civil Procedure 26*") (emphasis added).

Furthermore, at this junction, permitting Steele to testify as an expert would substantially prejudice Defendants. With the trial to commence in a little over two weeks, HSBC is unable to secure their own expert to counter the expert opinions of Steele. Flansburg Decl. ¶ 8. HSBC is also unable to conduct the expert discovery that it would have performed had timely expert disclosure been made by Plaintiff. Flansburg Decl. ¶ 8. The Consent Scheduling Order required this expert discovery to be completed by October 1, 2017. ECF No. 47.

Jackling's disingenuous attempt to proffer Steele as a lay witness when Steele does not have any personal knowledge, and when his testimony clearly contains specialized knowledge, as defined by Rule 701(c), of the events in this case is an underhanded tactic to circumvent the strict standards of Federal Rule of Evidence Rule 702, and the good faith cooperation that is supposed to guide parties' conduct.

## C. Jules Steele's expert testimony should be precluded because it is irrelevant

Jackling should be precluded from calling witnesses to testify as to wholly irrelevant facts that, if introduced, would almost certainly confuse the jury. *See* Fed. R. Evid. 401-402. As discussed above, the only issue that survived summary judgment in this action with respect to damages was whether Jackling suffered economic damages in the form of credit denials from Dorschel Toyota and Cortese Ford due to HSBC's reporting and investigation. Testimony as to rates for "homeowners insurance and automobile insurance" as determined by an "individual's credit score history" is irrelevant to this issue.

## POINT V

## JACKLING SHOULD BE PRECLUDED FROM TESTIFYING AS TO DAMAGES AND LATE MORTGAGE PAYMENTS BECAUSE HIS TESTIMONY WOULD BE SPECULATIVE AND WHOLLY IRRELEVANT TO THE ISSUES IN THIS CASE

### A.    Jackling is unable to testify as to damages related to the alleged credit denials

Jackling is not qualified to testify about the value of his impaired credit, nor can he testify about the grounds for the credit denials at issue here. *See Cash Energy, Inc. v. Weiner*, 81 F.3d 147, at * 2 (1st Cir. 1996) (holding that, on summary judgment, "[the plaintiff] has asserted three applicable theories for the measurement of his damages, but, without expert testimony, he has failed to demonstrate a trial worthy issue of fact on any.").

As noted elsewhere, the only issues that survived summary judgment in this action with respect to damages was whether Jackling suffered economic damages in the form of credit denials from Dorschel Toyota and Cortese Ford due to HSBC's reporting and investigation.  ECF No. 74, at 21.  Jackling has yet to quantify his damages, and even if he had those numbers would be completely speculative.  Accordingly, he cannot prove his damages related to the credit denials or his allegedly damaged credit in general.

### B.    Jackling proffered testimony as to late mortgage payments and deposit amounts is irrelevant

Jackling intends to "testify that he was never late with his mortgage payments," and that "he had at all relevant times sufficient amounts on deposit with HSBC to cover the monthly payments."  ECF No. 91.  This testimony is irrelevant to this action. As mentioned above, in its Summary Judgment Order, this Court dismissed Jackling's claims related to delinquent payments made during the 2010 forbearance period, and further limited his claims with respect to the 2011 modification payments to whether HSBC reasonably investigated  the accuracy of its reporting.  *See* ECF No. 74, at 9.  Thus, Jackling

should be precluded from testifying regarding any mortgage payments he made, regardless of whether they were timely.  *See* Fed. R. Evid. 401-402.

## CONCLUSION

The issues in this action are very narrow.  Indeed, Jackling himself recognized that the only "issues remaining after the Court's Summary Judgment Order and Decision are: (a) whether HSBC reasonably investigated  the 2011 modification payments following receipt of the December 2014, and January 2015, ACDVs, and (b) whether Mr. Jackling suffered economic damages in the form of credit denials from Dorschel Toyota and Cortese Ford due to HSBC's reporting and investigation of those payments."  ECF No. 91, at 1. Nevertheless, Jackling seeks to admit evidence at trial that in no way relates to those admittedly limited issues.  Instead, Jackling seeks to make this trial about previously litigated and dismissed issues in total disregard of this Court's direction.

Accordingly, for the reasons set for the above, Jackling should be precluded from: 1) submitting evidence relating to the credit denial letters; 2) from calling witness David M. Kaplan, Esq. to testify to matters and statements provided to Hon. Marion W. Payson in August 2017 as part of judicially sponsored settlement discussions; 3) from calling witnesses Sheila Ferguson and Janet Pyzer Young to testify regarding HSBC's policy with respect to closing documents; 4) from Jackling testifying that he was never late with his mortgage payments and damages related to alleged credit denials from Dorschel North and Cortese Ford; and 5) from calling witness Jules Steele to testify regarding damages.

Dated: Rochester, New York
August 15, 2019

PHILLIPS LYTLE LLP


By: /s/ Chad W. Flansburg
Chad W. Flansburg
Attorneys for Defendants
*HSBC Bank USA, N.A., AND HSBC*
*Mortgage Corporation (USA)*
28 East Main Street
Suite 1400
Rochester, New York 14614-1935
Telephone No. (585) 238-2000
cflansburg@phillipslytle.com